UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

VERA M. S[1]

                           Plaintiff,

     v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

                        Defendant.

Case No. 6:20-cv-1466-AC

OPINION AND ORDER

_____

ACOSTA, Magistrate Judge:

     Plaintiff Vera M. ("Plaintiff") filed this action under 42 U.S.C. §405(g) of the Social

Security Act (the "Act") to review the final decision of the Commissioner of Social Security

("Commissioner") who denied her social security disability benefits insurance benefits

("Benefits").  The court finds the ALJ provided clear and convincing reasons for discounting

_____

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of
the non-governmental party in this case.

Plaintiff's testimony and that he properly weighed the medical evidence. Accordingly, the Commissioner's final decision is supported by substantial evidence in the record and is affirmed.[2]

### Procedural Background

On September 7, 2017, Plaintiff filed an application for Benefits alleging an onset date of June 30, 2015. The application was denied initially, on reconsideration, and by the Administrative Law Judge ("ALJ") after an August 1, 2019 ("Hearing"). The Appeals Council denied review and the ALJ's decision became the final decision of the Commissioner.

### Factual Background[3]

Plaintiff is fifty-three years old. She has an 11th grade education. Plaintiff has not been involved in a successful work attempt since onset date of June 30, 2015. She alleges disability because of fibromyalgia, epilepsy, and chronic pain in her lower back, hip, and neck. She meets the insured status requirements entitling her to Benefits through September 30, 2019.

I.    Plaintiff's Testimony

In a Function Report dated February 26, 2018, Plaintiff described her average day as follows: "I get dressed then I wait about 45 minutes because of the pain and stiffness. I try to get some cleaning done then I make something to eat. Often, it depends on the amount of pain and stiffness. Some days I don't get anything done and my husband does the cooking and cleaning" (Tr. of Social Security Administrative R., ECF No. 11 ("Admin. R."), at 234.) Plaintiff reported

---

[2] The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c)(1).

[3] Plaintiff asserts the ALJ erred when considering limitations relating to her fibromyalgia and resulting difficulties with concentration due to malaise, increased tearfulness, depression, sleep disturbance, fatigue, dysuria, and abdominal pain. Consequently, the court concentrates its review on medical evidence relating primarily to these limitations.

her impairments affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, and sleep. (Admin. R. at 238.)    Specifically, Plaintiff stated she only "gets maybe two to three hours, sometimes four hours of sleep" because of her impairments.    (Admin. R. at 234.)    She could not lift more than twenty pounds and could not sit for long or walk more than a mile without increased pain.    (Admin. R. at 238.)    Plaintiff reported she has a difficult time completing tasks, concentrating, and getting along with others.    (Admin. R. at 238.).

Plaintiff noted she has difficulty dressing herself, stating "I have to sit down to put on my pants, socks, and shoes because it hurts to bend over to put on pants and socks or tie my shoes." (Admin. R. at 238.)    Plaintiff uses handles in her shower and bathtub so that she can get in and out.    (Admin. R. at 235.)    She ate fewer meals and when she did eat, the meals were simple, such as sandwiches, frozen dinners, soup.    (Admin. R. at 235.)    Plaintiff reported she has difficulty remembering to do certain things and often needs daily reminders.    (Admin. R. at 235.)

At the Hearing, Plaintiff testified she had seizures once or twice a month due to epilepsy. Plaintiff stated the seizures prevented her from working.    (Admin. R. at 43.)    Plaintiff testified her back pain also contributed to her inability to keep a job.    (Admin. R. at 43.)    She stated: "Constant pain all the time. I now have handrails going upstairs from the bottom of our house so I can get into our house without a lot of pain.    I have handrails and a step to help me get in and out of bed and in and out of the bathtub."    (Admin. R. at 40.)    Plaintiff testified she trained a service dog to help her with support.    (Admin. R. at 44.)

When asked about her fibromyalgia, Plaintiff described her symptoms as the following, "[c]hronic pain, I'm tired because when I sleep at night, I only get maybe two to three hours, sometimes I'm tossing and turning from side to side because I can't lay on my stomach and I can't

Page 3  – OPINION AND ORDER

lay on my back." (Admin. R. at 42.) When asked about her inability to retain a job, Plaintiff stated, "I can't stand there two to three hours at a time and so I would ask for extra breaks which I got written up for because I can't stand there and do the belt work." (Admin. R. at 42.) Specifically, when addressing her bipolar disorder, Plaintiff stated "I get really irritable. I've been written up at work for causing a hostile work environment. I go from happy to sad to mad." (Admin. R. at 42.) Plaintiff testified that her treatment consists of multiple prescriptions including fluoxetine, Lamictal, and over-the-counter medication. (Admin. R. at 39.)

II.    <u>Vocational Evidence</u>

Jaye Stutz, MA, impartial vocational expert ("Stutz"), appeared at the hearing and classified Plaintiff's past relevant work as a cannery worker as unskilled, light work with an SVP of two. (Admin. R. at 46.) The ALJ asked Stutz if a hypothetical individual of Plaintiff's age, education, and work experience is able to perform at a modified light duty exertional level with the following limitations: this individual can occasionally climb ramps/stairs; balance and stoop, can frequently kneel, crouch and crawl; should never climb ladders, ropes, or scaffolds; should not work around hazards such as dangerous machinery or unprotected heights, and should not operate motor vehicles as part of the job due to mental limitations. (Admin. R. at 47.) Stutz testified such an individual would not be able to perform Plaintiff's past relevant work experience but would be able to work as an assembler of electrical accessories and basket filler. (Admin. R. at 47.) When the ALJ further limited the hypothetical individual from someone who could frequently kneel, crouch, or crawl to someone who could only occasionally kneel, crouch, or crawl, Stutz testified such individual would still be able to perform work as an assembler of electrical

accessories and basket filler.   (Admin. R. at 48.)   However, if the individual missed work more

than one day a month on a consistent basis, they will be terminated.   (Admin. R. at 48.)

III.    ALJ Decision

The ALJ found Plaintiff suffered from the severe impairments of fibromyalgia,

degenerative disc disease of the lumbar spine, seizure disorder, bipolar disorder, and post-

traumatic stress disorder and determined the claimant had not engaged in substantial gainful

activity since the alleged onset date of June 30, 2015.   (Admin. R. at 16.)   While conceding

Plaintiff's impairments limited her ability to perform basic work activities, the ALJ found such

impairments did not meet or equal the severity of any listed impairment.   (Admin. R. at 16.)   As

a result of her impairments, the ALJ determined:

> Plaintiff could perform light work except she can occasionally climb ramps and
> stairs, but never climb ladders, ropes, or scaffolds.   She can occasionally balance,
> kneel, stoop, crouch, and crawl.   She can tolerate no exposure to workplace
> hazards such as dangerous machinery and unprotected heights.   She cannot drive
> a motor vehicle as a part of the job.   She can understand, remember, and carryout
> short, simple job instructions with a general educational development reasoning
> level of two or less consistent with unskilled work as defined by the Dictionary of
> Occupational Titles (DOT[4]).

(Admin. R. at 18.)

Consequently, the ALJ found Plaintiff not disabled from June 30, 2015, through the date of August

13, 2019 decision (Admin. R. at 24.)

The ALJ found Plaintiff's "medically determinable impairments could reasonably be

expected to cause the alleged symptoms; however, the claimant's statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

---

[4] *Dictionary of Occupational Titles* (U.S. Department of Labor, 1991）.

medical evidence and other evidence in the record for the reasons explained in this decision."
(Admin. R. at 19.)   The ALJ determined Plaintiff's statements about the limiting effects of her
symptoms were not supported by medical records.   In assessing Plaintiff's physical impairments,
the ALJ found the consultative examination conducted by Dr. Karsten Johnson, D.O. ("Dr.
Johnson") to be particularly persuasive.   During this exam, Plaintiff was able to dress and undress
adequately; squat and rise with ease; rise from a sitting position without assistance; and
experienced no difficulty getting up and down from the exam table.   (Admin. R. at 20.)   While
Plaintiff experienced some decreased range of motion in her back, neck, and great toes, she
retained full range of motion in her shoulders, elbows, wrists, hands, hips, knees, and ankles.
(Admin. R. at 20.)   Plaintiff had good hand-eye coordination and could make a fist and fully
extend her hands.   (Admin. R. at 20.)   Her fingers functioned with normal opposition and she
was able to pinch, grasp, and manipulate large and small objects without difficulty.   (Admin. R.
at 20.)   In assessing Plaintiff's physical impairments relating to fibromyalgia and backpain, the
ALJ found Plaintiff had some decreased range of motion, however, she exhibited no scoliosis, no
swelling or erythema, normal rotation, normal side bending and five out of five muscle strength.
(Admin. R. at 20.)   Regarding her seizure disorder, Plaintiff reported experiencing two grand mal
seizures in August of 2018 and takes Lamictal to manage the seizures.   (Admin. R. at 20.)

The ALJ then considered Plaintiff's mental impairments and concluded such impairments
did not result in any appreciable limitations.   The ALJ found medical records pertaining to a
psychodiagnostics evaluation conducted by Douglas Smyth, Ph.D. ("Dr. Smyth") to be persuasive.
The ALJ found Plaintiff "demonstrated alertness, orientation, casual dress, average grooming and
hygiene, variable mood and affect, intact memory, attention, concentration, and cognition, normal

speech, with intact insight, and judgment, a generally linear and logical thought process, normal thought content."   (Admin. R. at 21.)

For these reasons, the ALJ found the medical records inconsistent with Plaintiff's allegations.   The ALJ concluded, "[a]fter considering all of the evidence, the undersigned has determined that a light level of physical exertion with additional restrictions is a correct assessment of the claimant's residual functional capacity.   While the claimant does have some limitations, the objective medical record is not consistent with the extent of the limitations she alleged."   (Admin. R. at 22.)

*Standard of Review*

The Act provides for payment of Benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.   42 U.S.C. § 423(a)(1). The burden of proof to establish a disability rests upon the claimant.   *Gomez v. Chater*, 74 F .3d 967, 970 (9th Cir.), *cert. denied*, 519 U.S. 881 (1996).   To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.   42 U.S.C. § 23(d)(1)(A).   An individual will be determined to be disabled only if there are physical or mental impairments of such severity that the individual is not only unable to do previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.   42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either Benefits because he or she is disabled.   20 C.F.R. §

404.1520 (2019); *Lester v. Chater*, 81 F .3d 821, 828 n.5 (9th Cir. 1995).    First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."    If the claimant is engaged in such activity, Benefits are denied.    Otherwise, the Commissioner proceeds to step two and determine whether the claimant has a medically severe impairment or combination of impairments.    A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."    20 C.F.R. § 404.1520(c).    If the claimant does not have severe impairment or combination of impairments, Benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of the specifically listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.    20 C.F.R. § 404. 1520(d).    If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.    If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant has performed in the past.    If the claimant is able to perform work which he or she has performed in the past, a finding of "not disabled" is made and Benefits are denied.    20 C.F.R. § 404.1520(e).

If the claimant is unable to do work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy considering his or her age, education, and work experience.    The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Distasio v. Shalala*, 47 F.3d 348, 349 (9th Cir. 1995).    The claimant is entitled to Benefits only if he or she is not able to perform other work.

Page  8  – OPINION AND ORDER

When an individual seeks Benefits because of disability, judicial review of the Commissioner's decision is guided by the standards set forth in 42 U.S.C. § 404.1520(f). The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 880 (9th Cir. 2006). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 2001). Thus, where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld, even where the evidence can support either affirming or reversing the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 66, 679 (9th Cir. 2005).

The ALJ is responsible for determining credibility, resolving conflict in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In determining a claimant's residual functioning capacity, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883, citing SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. § 404.1545 (a)(3) (2019); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

The reviewing court must consider the entire record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence. *Lingenfelter v. Astrue*, 504 F .3d 1028, 1035 (9th Cir. 2007). However, a reviewing court may not affirm the Commissioner on a ground upon

which the Commissioner did not rely. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); see also *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

*Discussion*

Plaintiff asserts the ALJ erred by failing to consider Listing 14.09D for fibromyalgia and other evidence to evaluate the intensity and persistence of her symptoms and determine how her symptoms limit her capacity. Plaintiff also asserts that the ALJ failed to provide clear and convincing reasons for rejecting her testimony. Lastly, Plaintiff argues the ALJ failed to show Plaintiff can perform a "significant number of jobs exist in the national economy." Plaintiff asks the court to enter an order reversing the Commissioner's decision and remanding for an immediate award of Benefits. The Commissioner contends the ALJ properly considered the evidence in accordance with the terms of the Act and related regulations, and the decision should be affirmed.

I.    <u>Fibromyalgia</u>

Plaintiff argues the ALJ erred by failing to consider Listing 14.09D for fibromyalgia. The Commissioner contends the ALJ properly considered the evidence in accordance with the terms of the Act and related regulations, and correctly evaluated Plaintiff's impairments against the criteria of the Listings.

At step three of the sequential evaluation process, the ALJ determines if any of Plaintiff's impairments meets or equals one of the Listings, which describe impairment that are severe enough to be *per se* disabling. 20 C.F.R. § 404.1525; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The Plaintiff carries the burden of producing evidence that establishes all of a Listing's requisite findings.

Here, Plaintiff fails to meet this burden because she fails to raise the argument that her fibromyalgia equals Listing 14.09D. "For a [Plaintiff] to qualify for benefits by showing that [her] unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, [s]he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531b (1990). Currently, there is no Listing for fibromyalgia. Therefore, Plaintiff must show her fibromyalgia, or a combination of her impairments, is equivalent to a listed impairment. "[A]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any Listing in an equivalency in either the proceedings before the ALJ or compare them to any Listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). Plaintiff failed to present to the ALJ any argument for medical equivalency at the Hearing or in her request for review submitted to the Appeals Council. Because the Plaintiff failed to properly preserve the issue for review, the ALJ was not required to consider Listing 14.09D for fibromyalgia.

II.    Plaintiff's Testimony

Plaintiff argues the ALJ erred by failing to identify specific, clear, and convincing reasons supported by substantial evidence in the record to discount her subjective symptom testimony. The Commissioner contends the ALJ reasonably discounted Plaintiff's subjective complaints as inconsistent with the medical evidence and other evidence in the record.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo v. Berryhill*, 87 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R § 416. 929. The first stage is a threshold test in which the claimant must

produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  *Molina v. Astrue*, 674 F. 3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F. 3d 1035, 1039 (9th Cir. 2008).   At the second stage, absent affirmative evidence the claimant is malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F .3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F .3d 1028, 1036 (9th Cir. 2007).   The ALJ must make sufficiently specific findings to permit the reviewing court to conclude the ALJ did not arbitrarily discredit the claimant's testimony.  *Brown-Hunter v. Colvin*, 806 F .3d 487, 493 (9th Cir. 2015).   Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim v. Colvin*, 763 F. 3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F. 3d at 1039.

"Credibility determinations are the province of the ALJ and the court may not "second-guess" the ALJ's determination if they have made specific findings that are supported by substantial evidence in the record.  *Fair v. Bowen*, 885 F. 2d 597, 604 (9th Cir. 1989).   The overall credibility decision may be upheld even if not all the ALJ's reasons for rejecting a claimant's testimony are upheld.   *Batson*, 359 F. 3d at 1197.   An ALJ needs only one valid reason for rejecting a claimant's subjective testimony with respect to symptoms and resulting limitations. *Id.*   (ALJ's decision to discredit symptom testimony may be upheld where specific justification not upheld if ALJ provided other valid rationale).

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" and did not identify any evidence to establish Plaintiff

was malingering.  (Admin. R. at 19.)   Consequently, the ALJ was required to offer clear and convincing reasons for rejecting Plaintiff's testimony with respect to the limitations supported by objective evidence.   To meet this standard, "[t]he ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints – '[g]eneral findings are insufficient." *Burch v. Barnhart*, 400 F. 3d 676, 680 (9th Cir. 2005), (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (*en banc.*) ("[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain.")

The ALJ stated "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Treichler v. SSA*, 775 F.3d 1090, 1103 (9th Cir. 2014). (quoting 42 U.S.C. § 405(b)(1)); *Brown-Hunter*, 806 F.3d at 493 (ALJ's finding that limitations identified by claimant were less serious than alleged based on unspecified claimant testimony and a summary of medical evidence insufficient to meet clear and convincing standard).   Here the ALJ engaged in additional discussion of the evidence and reasons for discounting Plaintiff's testimony, specifically identifying inconsistent medical records.

    *A. Inconsistent with Reported Daily Activities*

The ALJ found Plaintiff's description of her daily activities to be inconsistent with her testimony regarding her functional limitations.   An ALJ may use a claimant's daily activities to reject her subjective testimony on either of two grounds: (1) if the reported activities contradict the claimant's other testimony; or (2) if the activities meet the threshold for transferable work

skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).   The ALJ was justified in discrediting Plaintiffs subjective testimony as contradictory of her physical limitations.

The ALJ found "[t]he claimant's alleged limitations are not fully supported by her reported activities in the medical and other evidence of record."   The ALJ found the record revealed Plaintiff was able to prepare simple meals, complete household chores, and shop for groceries. (Admin. R. at 22.)   The record also showed that the Plaintiff walked a half a mile to one mile every other day for exercise.   (Admin. R at 22.)   At the Hearing, Plaintiff testified that she uses handrails and has trouble standing for more than two or three hours.   (Admin. R. at 40.)   Further, she testified to having a service dog to help in case she falls.   (Admin. R. at 41.)   Consequently, to the extent these daily activities relate solely to plaintiff's ability to engage in physical work, the ALJ properly relied on them to discount Plaintiff's reported difficulties with completing physical work.   The court finds the ALJ properly discounted Plaintiff's testimony as inconsistent with her description of her activities of daily living.

*B.  Inconsistent with Medical Records*

The ALJ discounted Plaintiff's testimony, in part, because the medical records did not support the severity of Plaintiff's limitations.   As explained above, the ALJ may engage in ordinary techniques of assessing a witness's credibility "such as weighing inconsistent statements regarding symptoms by the claimant." *Smolen*, 80 F.3d 1284.   Thus, it is not legally impermissible to give a claimant's testimony reduced weight because that testimony contradicts the objective medical evidence in the record.   *Id.*   However, the ALJ may not "make a negative credibility finding 'solely because' the claimant's symptom testimony 'is not substantiated

affirmatively by objective medical evidence.'"  *Stockwell v. Colvin*, No. 3:13-cv-01220-HZ, 2014
WL 6064446, at *3 (D. Or. Nov. 11, 2014).

Regarding Plaintiff's physical impairments, Plaintiff reported chronic pain and claimed her
symptoms interfered with her ability to engage in activities that required lifting, squatting, bending,
standing, reaching, walking, sitting, kneeling, and climbing stairs, as well as remembering,
concentrating, completing task, and getting along with others.   (Admin. R. at 233-248.)   The ALJ
specifically cited and relied on Dr. Johnson's consultative examination which revealed:

> She was able to dress and undress adequately.   She was able to squat and rise with
> ease.   She was able to rise from a sitting position without assistance.   She had no
> difficulty getting up and down from the exam table.   The claimant had some
> decreased range of motion in her back, neck and great toes, but full range of motion
> in her shoulders, elbows, wrists, hands, hips, knees, and ankles.   She had a normal
> gait but some mild balance problems.   She had 6/18 positive fibromyalgia tender
> points.   She had some abnormal pinprick and light touch sensation in the bilateral
> lower extremities.   She had good hand eye coordination.   She was able to make a
> fist and fully extend her hands.   Her fingers functioned with normal opposition.
> She was able to pinch, grab, and manipulate large and small objects without
> difficulty.   The claimant had five out of five motor strength, with otherwise intact
> sensation, reflexes and muscle tone.   The claimant also had a negative indication
> during the straight leg-raising test.

(Admin. R. at 20.)

As a result, Plaintiff's testimony regarding the severity of her physical limitations is inconsistent
with the medical records and clinical findings cited by the ALJ.   Consequently, the ALJ correctly
relied on such medical evidence as a reason for discounting Plaintiff's testimony.

Regarding Plaintiff's mental health impairments, the record establishes Plaintiff has been
diagnosed with a bipolar disorder, PTSD.   (Admin. R. at 74.)   Plaintiff testified she is irritable
and has trouble concentrating.   (Admin. R. at 42.)   Moreover, Plaintiff testified she experiences
mood swings.   (Admin. R. at 42.)   The ALJ specifically cited and referred to a mental

Page 15  – OPINION AND ORDER

examination conducted by Dr. Smyth, which observed the Plaintiff was alert, orientated, cooperative.   Further, Dr. Smyth concluded Plaintiff's attention span was average, her cognition was grossly intact, and she was able to understand and remember short directions.   Plaintiff was also able to spell the words "dog", "broom", and "world" both forward and backward.   (Admin. R. at 20.)   Because Plaintiff's testimony regarding the severity of her symptoms is not supported by various medical records and clinical findings, the ALJ did not err in identifying inconsistent medical evidence as a reason for discounting Plaintiff's testimony.

### C.  Conservative Treatment

The ALJ also discounted Plaintiff's testimony based on treatment he described as "very conservative," primarily because Plaintiff mostly relied on over-the-counter and prescription medication to treat her impairments.   (Admin. R. at 22.).   The ALJ found "[Plaintiff] has not generally received the type of medical treatment one would expect for a totally disabled individual."   (Admin. R. at 22.)   Evidence of conservative treatment "is sufficient to discount a claimant's testimony regarding the severity of an impairment."   *Parra v. Astrue*, 481 F. 3d 742, 751 (9th Cir. 2007).   Objective medical evidence, such as evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, can be an important indicator of intensity and persistence of a claimant's symptoms.   20 C.F.R. § 404. 1529(c)(4).

The record reveals Plaintiff did not seek any treatment other than over-the-counter and prescription medication for her mental or physical impairments.   Failing to seek an "aggressive treatment program" and an "alternative or more-tailored treatment program" can support an ALJ's findings in support of an adverse credibility finding.   *Tommasetti v. Astrue*, 533 F.3d 1035, 1040

Page 16  – OPINION AND ORDER

(9th Cir. 2008).    For the reasons stated above, the ALJ correctly relied on conservative treatment to discount Plaintiff's treatment.

III.    Vocational Expert Testimony

Plaintiff argues the ALJ failed to meet his step five burden because the jobs he identified as appropriate for Plaintiff represent only 6,540 jobs in the national economy, which does not constitute a significant number.    The Commissioner argues Plaintiff forfeited any challenge to the vocational expert's job numbers by failing to submit her rebuttal evidence during the Hearing before the ALJ.

At step five, the ALJ carries the burden in determining whether a "significant number of jobs exist in the national economy" which Plaintiff can perform.    *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984); 20 C.F.R. § 404.1520(a).    Here the ALJ presented to Stutz a hypothetical with limitations matching Plaintiff's.    Stutz testified such an applicant could perform three relevant jobs: assembler of electrical accessories, small parts assembler, and garment sorter.    Stutz also testified 80,000 jobs for assemblers of electrical accessories, 25,000 small parts assembler jobs, and 30,000 garment sorter jobs existed nationwide, for a total of 135,000.    When cross-examining Stutz, Plaintiff's counsel inquired about the basis for the job numbers and Stutz responded he used Job Browser Pro, a software that is used by vocational experts throughout the country to gain access to current labor market information.    Plaintiff's counsel then asked from where Job Browser Pro obtains their numbers, and Stutz responded from the Bureau of Labor.

The Ninth Circuit Court of Appeals in *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2017) decided, "when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceeding before the agency the claimant forfeits such a challenge on

appeal, at least when that claimant is represented by counsel." Here, Plaintiff was represented by counsel at the hearing and forfeited any challenge to the Stutz's testimony by failing to raise the possibility of any contrary evidence in the proceedings before the ALJ. While Plaintiff's counsel asked Stutz for the basis for his job estimates, counsel did not challenge the numbers themselves. Because Plaintiff failed to challenge the accuracy of the vocational expert's testimony, Plaintiff forfeits the challenge on appeal.

*Conclusion*

The Commissioner's findings on Plaintiff's disabilities, considering the record, are supported by substantial evidence. The decision of the Commissioner is AFFIRMED.

DATED this 2nd day of December 2021.

JOHN V. ACOSTA
United States Magistrate Judge